AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| KIAM KNOWLES and WAYNE GLINTON, | ) | Case No. 20-6035-SNOW |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 21, 2020__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 and (b)(1)(B) | Conspiracy to Possess with the Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jamey Gavalier, Special Agent, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/22/20

_____
Judge's signature

City and state: Fort Lauderdale, Florida     Lurana S. Snow, United States Magistrate Judge
Printed name and title

## AFFIDAVIT

Jamey Gavalier, first being duly sworn, deposes and states:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been assigned to the Miami Field Division since February 2015. In that assignment, I have been involved in investigations involving narcotics trafficking and money laundering. As a Special Agent with DEA, I have participated in numerous narcotics investigations involving physical and electronic surveillance; the control and administration of confidential sources; international drug importations; and domestic drug organizations. I have participated in the arrest and subsequent prosecution of numerous drug traffickers. I also have spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, methods and practices that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods of investigating and dismantling drug trafficking organizations.

2. This Affidavit is submitted in support of a criminal complaint against KIAM KNOWLES and WAYNE GLINTON for conspiracy to possess with intent to distribute cocaine and fentanyl, in violation of Title 21, United States Code, Section 846 and 841(b)(1)(B). Because this Affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included every fact known to me concerning this investigation.

3. In or about August 2019, law enforcement received information from a confidential source ("CS"), who has proven to be reliable and trustworthy, that a Bahamian male who the CS knew as "Superman" was involved in the importation of cocaine to South Florida via cruise ships arriving from the Bahamas. The source further advised that Superman distributes kilogram quantities of cocaine in the Broward County area for approximately $29,000 per kilogram and

used telephone number (754) 234-9050 ("TELEPHONE 1"). As discussed below, the individual known to the CS as Superman would later be identified as KNOWLES.

4. On or about August 12, 2019, at approximately 1:35 p.m., the CS placed a call to TELEPHONE 1 and spoke with Superman. In this call, Superman and the CS discussed the sale of three kilograms of cocaine for a total of $84,000. However, due to other developments in the investigation, no such transaction took place.

5. On or about November 12, 2019, CS advised law enforcement that a few days earlier, CS spoke with Superman, and that Superman offered to sell CS fentanyl for $2,000 per ounce, heroin for $1800 per ounce, and marijuana for $500 per pound. CS also advised that Superman was using a new telephone number -- (754) 801-3128 ("TELEPHONE 2").

6. On or about November 17, 2019, at approximately 2:20 p.m., the CS placed a recorded phone call to Superman at TELEPHONE 2. In pertinent part, the CS and Superman had the following conversation:

> CS: Listen, my people tomorrow come come from Melbourne
> Superman: Right
> CS: What time you um get off work. I get off work bout 4 o'clock
> Superman: I get off at 5
> CS: What time, what time is a good time for you so I don't have them waiting all night.
> Superman: Nah, you just need to let me know what I need to get so I can get UI... tomorrow (voices overlapping)
> CS: 2 of them, that's what, exactly, that's I want to know. You can 2, 2 of the fettiwop.
> Superman: 2 fettiwop's, alright
> CS: That way just call me today and let me know if you got it so I know to tell them to come tomorrow then.
> Superman: Alright, no problem. Just as I get it Imma let you know.

7. Based upon my training and experience, I believe that "fettiwop" is a slang term for fentanyl, and that in this conversation, Superman offered to sell the CS two ounces of fentanyl which, at the prices quoted earlier by Superman, would cost $4,000.

2

8. On or about November 18, 2019, the CS met with Superman at a predetermined location in Fort Lauderdale, Florida. At approximately 6:00 p.m., law enforcement established surveillance in the vicinity, searched the CS and determined that the CS did not have any contraband, money or weapons. Law enforcement equipped the CS with an audio/video recording device and $4,000 Official Advanced Funds ("OAF"). The CS placed a controlled call and advised he would meet Superman shortly.

9. At approximately 6:10 p.m., law enforcement observed the CS arrive at the target location in the CS's vehicle. At approximately 6:44 p.m., law enforcement observed a silver Chevrolet Silverado arrive at the target location. Superman exited the Silverado and entered the CS vehicle. During the transaction, Superman provided the CS a Ziploc baggie containing a brown substance in exchange for $4,000 in OAF. Superman and the CS discussed a future narcotics transaction before Superman exited the CS vehicle and returned to the Silverado. Because of safety concerns, the substance Superman was not field tested, but was submitted to a laboratory and analysis is pending.

10. On January 20, 2020, at approximately 6:02 p.m., the CS placed a recorded phone call to Superman at TELEPHONE 1. In pertinent part, the CS and Superman had the following conversation:

> CS: What's up for tomorrow, you ain't never get back wit me.
> Superman: I was waiting on you, you said on Monday you was gonna call me and let me know 5 or 9.
> CS: Ok, so they ran out da other shit.
> Superman: Nah. Nah
> CS: Ok, ok, they didn't run out them other things, then 1 and 5.
> Superman: 1 and 5, alright
> CS: What time you get off work cause I get off bout 5 o'clock.
> Superman: I get off at 5, so.
> CS: Ok, just call me when you get off tomorrow then. I'll be waiting for your call.

3

11. Based upon my training and experience, I believe that in this conversation, Superman agreed to sell the CS five ounces of fentanyl and one kilogram of cocaine.

12. On January 21, 2020, in recorded calls, the CS arranged to meet Superman in the vicinity of the West Marine, located at 2401 South Andrews Avenue, Fort Lauderdale, Florida. Prior to the transaction, the CS met with law enforcement agents, who searched the CS and determined that the CS did not have any contraband, money or weapons. Law enforcement equipped the CS with an audio/video recording device and transmitter. The CS waited in a vehicle at the West Marine.

13. At approximately 6:45 p.m., law enforcement observed the same silver Chevrolet Silverado seen on November 18, 2019, arrive at the West Marine and park directly next to the CS vehicle. There were two occupants. The driver, later identified as KNOWLES, entered the front passenger seat of the CS vehicle. KNOWLES provided a green bag to the CS. Thereafter, KNOWLES, and the passenger of the Silverado, GLINTON, were placed into custody.

14. In the green bag given to the CS, law enforcement recovered approximately 740 grams of a white powder and a bag containing approximately five ounces of suspected fentanyl. Due to safety concerns, the suspected narcotics were submitted to a laboratory and results are pending. In addition, a handgun was found between the driver seat and the center console of the Silverado.

15. KNOWLES was provided with written *Miranda* warnings, waived his rights, and agreed to speak with law enforcement. KNOWLES admitted he intended to sell approximately 740 grams of cocaine (with some crack cocaine) to the CS for a profit of $375. KNOWLES said that the "fet," referring to the suspected fentanyl, belonged to GLINTON. KNOWLES was in

possession of TELEPHONE 1 at the time of his arrest.  KNOWLES stated that the gun was his.

16.  GLINTON was provided with written *Miranda* warnings, waived his rights, and agreed to speak with law enforcement.  In substance, GLINTON admitted that he had acted as a middleman for the sale of the 5 ounce bag of suspected fentanyl.  GLINTON said he believed the drugs were "China White," which is a street name for heroin.  GLINTON said he expected to earn $500 from the transaction.

17.  Based on the foregoing facts, I respectfully submit there is probable cause to believe that on or about January 21, 2020, in Broward County, in the Southern District of Florida, KIAM KNOWLES and WAYNE GLINTON, did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846 and 841(b)(1)(B).

Respectfully submitted,

James R. Gavalier, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me this the 22-day of January, 2020.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

5